IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDDIE WHITE, JR.,

    **Plaintiff,**

vs.                                    No. CIV 99-0203 LCS/KBM-ACE

S.E. ACQUISITION OF ALBUQUERQUE,
NEW MEXICO, INC. d/b/a HILLCREST
FUNERAL HOME, JIM EDWARDS,
PHILLIP PEEVEY, and STAN NULL,

    **Defendants.**

## MEMORANDUM OPINION

This matter is before the Court on Defendant S.E. Acquisition of Albuquerque, New Mexico, Inc.'s (S.E. Acquisition) Motion for Partial Summary Judgment, filed February 7, 2000, (Doc. 45). In April, 1999, Plaintiff (White) dismissed his claims against Jim Edwards, Stan Null, and Phillip Peevey pursuant to Federal Rule of Civil Procedure 41(a)(1). Thus, S.E. Acquisition is the only remaining defendant in this action. The Court, having considered the arguments, pleadings, relevant law, and being otherwise fully informed, finds that the Motion should be GRANTED, in part, and DENIED, in part.

**Background.**

White is an African-American male. In 1991, Jim Edwards, owner of Albuquerque Mortuary Services (AMS), hired White as an apprentice. Throughout the course of his employment with AMS

and S.E. Acquisition, White maintained full-time employment with Sandia Laboratories. In April, 1993, White and his wife, Margaret, purchased 200 shares of AMS stock for $20,000.00. In December, 1993, the stock purchase agreement was converted to a $20,000.00 registered debenture by mutual agreement. In June or July, 1994, White and Edwards opened Hillcrest Funeral Home. In October, 1994, White acquired 175 shares of AMS stock, which reflected a 15% ownership interest in Hillcrest.

In 1996, Hillcrest was operating in debt. At the same time, Edwards' health had deteriorated and he was at home or in the hospital for over six months. During this period, White and Edwards discussed and negotiated a potential sale of Hillcrest to S.E. Acquisition. Stan Null and others represented S.E. Acquisition during these negotiations. On December 10, 1996, S.E. Acquisition purchased Hillcrest. White received $70,000.00 in relation to the sale and an additional $23,750.00 in exchange for the non-competition agreement.

After the sale, S.E. Acquisition offered Edwards a position as manager. Although S.E. Acquisition extended offers to other Hillcrest employees, it did not extend an offer to White. White approached S.E. Acquisition's management and asked why he did not receive an offer of continued employment. After some discussions, S.E. Acquisition offered, and White accepted, a written employment contract for a position as a part-time associate manager of at the rate of $10.00 per hour.

White contends that, as early as December, 1996, he began complaining to S.E. Acquisition about the way Edwards treated him. Edwards refused to discuss the operation of the business with him, failed to notify him of meetings, told the staff and the community that White no longer worked at Hillcrest, and treated his clients rudely. White testified that Edwards used the word "nigger" in conversations about him to other employees. (White Deposition at 122.) White also testified that

others told him that Edwards called black families "nigger," and that a client, Marion Reed, told him that Edwards "called her a nigger and all the black folks in town and the preachers niggers." (White Deposition at 129.) Edwards also told White that other funeral homes did not want him to pick up their deceased because they did not want the families to think they had black employees. (White Deposition at 140.)

Hillcrest employee Elizabeth Rymarz testified that Edwards would say "horrible things" about White and referred to him by "curse names." (Rymarz Deposition at 35.) Rymarz also testified that Edwards would use a Spanish term that was the equivalent of "nigger." (Rymarz deposition at 45-48.) Rymarz testified that the atmosphere at Hillcrest was permeated with anger and hostility. (Id. at 18.) Edwards wrote in his journal that S.E. Acquisition would not fire White because it was "scared of a racial suit." (Plaintiff's Exh D.) Edwards wrote that he told S.E. Acquisition "to go ahead and fire them because I don't believe they will do anything." (Id.)

White asserts that when he told Null that Edwards was using the term "nigger" and a Spanish racial slur, Null told him "It's only a word, don't take it personal." (White's Deposition at 126.) Andrea Westmoreland of S.E. Acquisition's Human Resources Department testified that, just before the 1997 Memorial Day weekend, White called her and complained of racial harassment. (Westmoreland Deposition at 13.) Westmoreland testified that Edwards admitted to her that he used racial slurs and called White a "black son-of-a-bitch" on at least one occasion. (Westmoreland Deposition at 45-46 and 50-52.) Westmoreland's interview notes indicated that the use of the racial slurs could not be documented in writing. (Plaintiff's Exh. B.) Westmoreland testified that Null told her that there was no need for her to investigate because he had assigned Phillip Peevey to address the situation. (Westmoreland Deposition at 19.) In June, 1997, Null assigned Phillip Peevey to a

3

management position to supervise Edwards. Null never formally disciplined Edwards, but did give him a verbal reprimand. (Null Deposition at 45-49.)

White contends that Peevey was ineffective as a manager and also became hostile towards him. White testified that Peevey stated that Hillcrest needed to upgrade its staff, seek out a better clientele, and get away from minorities. (White Deposition at 178-79.) Rymarz testified that Peevey, referring to a mixed black and Hispanic family, stated that "we don't need those kind of people." (Rymarz Deposition at 37-38.) On one occasion while White was at work, Peevey asked him "Why are you here?" (Defendant's Undisputed Facts 31-32.)

On October 21, 1997, White filed an EEOC charge of racial discrimination against S.E. Acquisition. After the EEOC filing, Null told him "Why not be a team player, Eddie? Ignore that stuff." (White Deposition at 126.) In October or November 1997, Null and Peevey stopped calling White into work. (Rymarz Deposition at 57-59; White deposition at 228.) As White only worked when he was called in, this decision had the effect of preventing him from working. (Rymarz Deposition at 57-59.) Although White had requested that he not be contacted for embalming due to ventilation problems, he testified he was willing to do other work. (White Deposition 75-76; 214-215.) White contends that Peevey changed the locks and did not give him the key. (White Deposition at 233-234.)

On December 23, 1997, White filed another EEOC charge of discrimination based on retaliation. White claims that on after he filed his EEOC charge for retaliation, Peevey made a key available to him. However, by this point, White claims he was having problems with his health. (Plaintiff's Exh. E.) White contends that after his physician advised him that workplace stress could be a contributing factor, White ceased going to work. (Plaintiff's Undisputed Facts at 19.) S.E.

4

Acquisition disputes these contentions and claims that it did not subject White to an adverse employment action.

After receiving a right to sue letter from the EEOC, White timely filed this action in the Second Judicial District Court for the State of New Mexico, alleging that S.E. Acquisition violated Title VII and the New Mexico Human Rights Act, and asserting claims for breach of contract, retaliatory discharge, intentional infliction of emotional distress, and prima facie tort. S.E. Acquisition removed the action to this Court on February 26, 1999. S.E. Acquisition answered, denying liability and asserting affirmative defenses. On July 30, 1999, the assigned United States Magistrate Judge referred White's contract claim to arbitration. On August 5, 2000, S.E. Acquisition filed an Amended Answer and Counterclaim for defamation. Plaintiff replied, denying liability and asserting affirmative defenses. In its Motion for Partial Summary Judgment, filed February 7, 2000, S.E. Acquisition argues it is entitled to summary judgment on White's hostile work environment, retaliation, prima facie tort, intentional infliction of emotional distress, and retaliatory discharge claims.

**Standard of Review.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *See Koch v. Koch Indus., Inc.,* ___ F.3d ___,

2000 WL 155459 at *4 (10th Cir. Feb. 14, 2000).

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1355, 89 L. Ed. 2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S. Ct. 1575, 1593, 20 L. Ed. 2d 569 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Koch,* ____ F.3d at ____, 2000 WL 155459 at *4. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586, 106 S. Ct. at 1356. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Koch,* ____ F.3d ____, 2000 WL 155459 at *4. The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to defeat a properly supported motion for summary judgment. *See id.*

**Discussion.**

I. **Whether S.E. Acquisition is entitled to summary judgment on White's hostile work environment claim because the alleged harassment was not sufficiently pervasive or severe.**

S.E. Acquisition asserts it is entitled to summary judgment on White's hostile work environment claims because he was subjected to, at most, isolated incidents of racial harassment. In order to prevail on this claim, White must establish that under the totality of the circumstances: (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus. *See Trujillo v. Univ. of Colorado Health Sciences Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) (*citing Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)). The severity and pervasiveness analysis looks to all the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). Resolution of this inquiry is "particularly unsuited for summary judgment because it is quintessentially a question of fact." *O'Shea v. Yellow Tech. Serv., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999). As discrimination claims often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the plaintiff. *Id.*

S.E. Acquisition argues that it is entitled to summary judgment because White was only subjected to isolated instances of racial discrimination. In support of the argument, S.E. Acquisition cites to *Witt v. Roadway Express*, 136 F.3d 1424 (10th Cir.) *cert. denied* \_\_\_\_ U.S. \_\_\_\_,119 S. Ct. 188, 142 L. Ed. 2d 153 (1998). The plaintiff in *Witt* relied on two instances of racial animus

7

occurring over a two-year period. *See Witt v. Roadway Express*, 136 F.3d at 1432. In addition, as the plaintiff in *Witt* testified that he "shrugged off" the offensive conduct, the Tenth Circuit found he had not established that the harassment was subjectively severe as required by *Harris*. *See Witt*, 136 F.3d at 1433.

In the instant case, however, White asserts that he was subjected to a continuing campaign of racial harassment. For instance, White testified that Edwards used the word "nigger" in conversations about him to other employees, called black families "nigger," and called one of his clients and others "niggers." Edwards admitted to Westmoreland that he called White a "black son-of-a-bitch." White further testified that Edwards told him that other funeral homes did not want him to pick up their deceased because they did not want the families to think they had black employees, that Edwards refused to discuss the business operations with him, failed to notify him of meetings, told the staff and the community that White no longer worked there at Hillcrest, and treated his clients rudely.

Rymarz testified that Edwards would say "horrible things" about White and referred to him by "curse names," that Edwards would use a Spanish term that was equivalent to "nigger," and that the atmosphere at Hillcrest was permeated with anger and hostility. White asserts that Peevey stated Hillcrest needed to get away from minorities and that "we don't need those kind of people." The record also indicates that White subjectively believed that the conduct to be so severe that it created an abusive and hostile environment and caused him adverse physical consequences.

It is true that isolated instances of harassment, while inappropriate and boorish, do not constitute pervasive conduct of sufficient severity to create a hostile work environment. *See Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (holding that two overtly racial comments and one

8

arguably racial remark over the course of eight years did not constitute pervasive conduct). However, the pervasiveness and severity inquiry is not a "counting measure" but instead requires the trier of fact to engage in a broad contextual analysis of the totality of the circumstances. *See Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1415 (10th Cir. 1997).

The record, when viewed in the light most favorable to White for purposes of summary judgment, establishes more than isolated incidents of racial harassment. The totality of the circumstances surrounding the conduct of Edwards, Peevey, and Null, as portrayed by White, is sufficient to constitute hostile work environment racial harassment. *See Harris v. Forklift, Systems, Inc.*, 510 U.S. at 23, 114 S.Ct. at 371; *O'Shea v. Yellow Tech. Serv., Inc.*, 185 F.3d at 1097. S.E. Acquisition has failed to meet its initial burden of demonstrating an absence of evidence to support White's case. *See Celotex v. Catrett*, 477 U.S. at 323, 106 S.Ct. at 2553. Moreover, even if S.E. Acquisition had met its burden, White has set forth specific facts showing a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d at 1201. As there is a genuine issue for trial as to a dispositive matter, S.E. Acquisition is not entitled to summary judgment on the pervasiveness and severity inquiry of the hostile work environment claim. *See Koch,* ____ F.3d ____, 2000 WL 155459 at *4. The Motion will be denied with respect to the pervasiveness and severity inquiry of White's hostile work environment claim. This issue must be resolved by the trier of fact.

**II.     Whether S.E. Acquisition is entitled to the affirmative defense that White unreasonably failed to take advantage of corrective opportunities.**

S.E. Acquisition claims is it is immune from White's hostile work environment claim because he failed to cooperate in their investigation and attempts to rectify the situation. In *Faragher v. City*

*of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998), the Court held:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Id. at 2292-93; *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed.2d 633 (1998).

S.E. Acquisition asserts that it is entitled to this affirmative defense because White had access to the Policy and Procedures Manual and because he failed to give it sufficient notice of the claimed racial harassment. A victim has a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages that result from violations of Title VII. *See Faragher v. City of Boca Raton*, 524 U.S. at 806, 118 S. Ct. at 2292. In this case, White disputes that he was given access to the Policy and Procedures Manual. The record also indicates that White repeatedly complained to Null and Westmoreland about racial harassment. Edward's journal entry reflects that S.E. Acquisition was aware of White's potential claim for racial harassment. Under these circumstances, S.E. Acquisition is not immune from liability under the affirmative defense set out in *Faragher* at the summary judgment stage.

Moreover, the Court in *Faragher* emphasized that no affirmative defense is available when a supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. *See Faragher v. City of Boca Raton*, 524 U.S. at 806, 118 S. Ct. at 2293. In this case, White claimed that Null and Peevey ceased calling him into work and changed the

locks. While determination of this issue would be premature at this juncture, these actions could interpreted by the finder of fact at trial as the tangible employment action of constructive termination. Hence, as the facts are disputed, it would be inappropriate to apply the *Faragher* affirmative defense on summary judgment in this case.

**III. Whether S.E. Acquisition is entitled to summary judgment on White's retaliation claim?**

Title VII makes it an unlawful employment practice "for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Section 2000e-2(a) lists actions that can constitute discrimination, specifying, among other things, a refusal to hire, a discharge, or any discriminatory treatment with respect to "compensation, terms, conditions, or privileges of employment." *Id.*

The three-pronged burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), applies to White's claim. In the absence of direct evidence, a prima facie case of retaliation requires a plaintiff to show that: (1) he engaged in protected opposition to discrimination; (2) he was subjected to adverse employment action by the employer; and (3) a causal connection exists between the protected activity and the adverse action. *See McCue v. Kansas Dep't of Human Resources*, 165 F.3d 784, 789 (10th Cir.1999). "If a prima facie case is established, the burden of production shifts, and the defendant must articulate a legitimate, non-discriminatory reason for the adverse action." *Purrington v. Univ. of Utah*, 996 F.2d 1025, 1033 (10th Cir.1993). If the employer offers such a reason, the plaintiff may survive

summary judgment by showing that there is a genuine dispute of material fact as to whether the proffered reason for the challenged action is pretextual. *See Richmond v. ONEOK*, 120 F.3d 305, 208 (10th Cir. 1997).

In filing his October 21, 1997 EEOC claim, White engaged in a protected activity. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). The next question is whether he was subjected to an adverse employment action. The Tenth Circuit liberally construes the concept of "adverse employment action" and, as there is no set test to determine what constitutes an "adverse employment action," each case must be evaluated on its own unique circumstances. *Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir.1998).

White claims that he was subjected to an adverse employment action when Null and Peevey stopped calling him into work and when Peevey changed the locks and neglected to give him a key. S.E. Acquisition contends that White did not suffer any adverse employment action because he refused to come to work and that Peevey made a key available to him. A plaintiff may make out a prima facie case of discrimination by his own testimony, even when the facts are disputed by his employer. *See MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir.1991).

White and Rymarz testified that, after the EEOC charge was filed, Null and Peevey stopped calling White into work and that, as White only worked when he was called in, this decision had the effect of preventing him from working. Although White had requested that he not be contacted for embalming due to ventilation problems, he testified he was willing to do other work. White also testified that Peevey changed the locks and did not give him the key. The testimony of White and Rymarz is sufficient to satisfy the adverse employment action component of the prima facie case for

the purposes of summary judgment.

In order to complete his prima facie case, White must also establish a causal connection exists between the protected activity and the adverse action. S.E. Acquisition contends that there is no connection between any adverse employment action and White's EEOC charges. A retaliatory motive may be inferred when an adverse action closely follows protected activity. *See Chavez v. City of Arvada*, 88 F.3d 861, 866 (10th Cir.1996). The closer the adverse action occurred to the protected activity, the more likely it will support a showing of causation. *Compare Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir.1994) (one and one-half month period between protected activity and adverse action may, by itself, establish causation) *with Richmond v. ONEOK, Inc.*, 120 F.3d at 209 (three-month period, standing alone, is insufficient to establish causation). In this case, White and Rymarz testified that Null and Peevey ceased calling him into work within one month of the EEOC filing. White testified Peevey changed the locks within two months of the October 21, 1997 filing. (White Deposition at 233-234.) Based on the temporal proximity, as well as Null's comments in response to the charge that White should be a "team player" and ignore the racial comments, a jury could infer that these actions were taken in retaliation for White's EEOC filing. White has therefore set out a prima facie case of retaliation.

The burden of production then shifted to S.E. Acquisition to articulate a legitimate, non-discriminatory reason for the adverse action. *See Purrington v. Univ. of Utah*, 996 F.2d at 1033. S.E. Acquisition has not proffered a legitimate non-discriminatory reason. Indeed, S.E. Acquisition's position is that it did not subject White to an adverse employment action. S.E. Acquisition has failed to meet its initial burden of demonstrating an absence of evidence to support Plaintiff's case. *See Celotex v. Catrett*, 477 U.S. at 323, 106 S. Ct. at 2553. Moreover, even if S.E. Acquisition had met

13

its burden, White has set forth specific facts showing a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d at 1201. As there is a genuine issue of fact as to a dispositive matter, S.E. Acquisition is not entitled to summary judgment on White's retaliation claim. *See Koch,* \_\_\_\_ F.3d at \_\_\_\_, 2000 WL 155459 at *4.

**IV.** **Whether S.E. Acquisition is entitled to summary judgment on White's claim for prima facie tort.**

This Court applies New Mexico substantive law to this supplemental claim. *See BankOklahoma Mortgage Corp. v. Capital Title Co.,* 194 F.3d 1089, 1103 (10th Cir.1999). New Mexico has joined a few jurisdictions recognizing a cause of action for prima facie tort. *See Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990). The elements of this cause of action are: "(1) an intentional and lawful act; (2) an intent to injure the plaintiff; (3) injury to the plaintiff as a result of the intentional act; (4) and the absence of sufficient justification for the injurious act." *Lexington Ins. Co. v. Rummel*, 123 N.M. 774, 777, 945 P.2d 992, 995, 1997-NMSC-043 (1997). Prima facie tort presumes that defendants underlying conduct is lawful. *See id.* As White alleges that Defendants unlawfully discriminated against him, prima facie tort is not applicable. *See Silverman v. Progressive Broad., Inc.*, 125 N.M. 500, 510, 964 P.2d 61, 71, 1998-NMCA-107 (Ct. App.1998). Moreover, prima facie tort should not be used to evade the stringent requirements of other established doctrines. *See Padwa v. Hadley*, 127 N.M. 416, 981 P.2d 1234, 1999-NMCA-067 (Ct. App.) *cert. denied* 127 N.M. 389, 381 P.2d 1207 (1999). White should not be permitted to claim prima facie tort as an alternative to meeting the more stringent requirements of Title VII. Therefore, S.E. Acquisition is entitled to judgment as a matter of law on White's claim for prima facie tort.

White has failed to respond to S.E. Acquisition's argument on this issue. In order to resist the motion for summary judgment, White was required to set forth specific facts showing there is a genuine issue for trial as to a dispositive matter. *See Koch,* \_\_\_\_ F.3d at \_\_\_\_, 2000 WL 155459 at \*4. This he failed to do. The Court has examined the record and resolved all reasonable inferences in the light most favorable to Plaintiff. White has failed to demonstrate a genuine issue for trial as to his claim for prima facie tort. Furthermore, under D.N.M.LR-Civ. 7.3(b)(4), failure to serve a response in opposition to any motion constitutes consent to grant the motion. White failed to respond to the Motion with respect to this issue. Therefore, I find that White has consented to the grant of summary judgment on this issue.

V. **Whether S.E. Acquisition is entitled to summary judgment on White's claim for intentional infliction of emotional distress.**

New Mexico law applies to this supplemental claim. *See BankOklahoma Mortgage Corp.*, 194 F.3d at 1103. Under New Mexico law, the Court must initially determine as a matter of law whether conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress. *See Trujillo v. Puro*, 101 N.M. 408, 414, 683 P.2d 963, 969 (Ct. App.1984). Generally, in order to qualify under this standard, the recitation of the underlying facts to an average member of the community must arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Padwa*, 127 N.M. at 419, 981 P.2d 1237 (*citing* Restatement (Second) of Torts § 46 cmt. d. (1965)). The conduct must be so extreme in degree as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community. *See Dominguez v. Stone*, 97 N.M. 211, 214, 638 P.2d 423, 426

(Ct. App. 1981). The mere fact that an actor knows that his conduct is insulting, or will deeply hurt another's feelings, is insufficient to establish liability under this theory. *See Padwa*, 127 N.M. at 419, 981 P. 2d at 1237. The conduct of S.E. Acquisition, as portrayed by White, although highly offensive, would not rise to the level necessary to permit recovery under the tort of intentional infliction of emotional distress. Therefore, S.E. Acquisition is entitled to judgment as a matter of law on White's claim for intentional infliction of emotional distress.

White has failed to respond to S.E. Acquisition's argument on this issue. In order to resist the motion for summary judgment, White was required to set forth specific facts showing there is a genuine issue for trial as to a dispositive matter. *See Koch,* \_\_\_\_ F.3d at \_\_\_\_, 2000 WL 155459 at *4. This he failed to do. The Court has examined the record and resolved all reasonable inferences in the light most favorable to Plaintiff. White has failed to demonstrate a genuine issue for trial as to his claim for intentional infliction of emotional distress. In addition, under D.N.M.LR-Civ. 7.3(b)(4), failure to serve a response in opposition to any motion constitutes consent to grant the motion. White failed to respond to the Motion with respect to this issue. Therefore, I find that White has consented to the grant of summary judgment on this issue.

**VI.      Whether S.E. Acquisition is entitled to summary judgment on White's claim for wrongful discharge.**

New Mexico law applies to this supplemental claim as well. *See BankOklahoma Mortgage Corp.*, 194 F.3d at 1103. Under New Mexico law, the tort of retaliatory discharge represents a public policy exception to the traditional at-will employment rule. *See Vigil v. Arzola*, 102 N.M. 682, 686-90, 699 P.2d 613, 617-21 (Ct. App.1983), *rev'd in part on other grounds*, 101 N.M. 687, 687 P.2d

1038 (1984), *overruled in part on other grounds by Chavez v. Manville Prods. Corp.*, 108 N.M. 643, 649, 777 P.2d 371, 377 (1989). Retaliatory discharge is a narrow exception to the at-will employment rule and its "genesis and sole application has been in regard to employment at-will." *Silva v. Albuquerque Assembly & Distr.*, 106 N.M. 19, 21, 738 P.2d 513, 515 (1987). It is undisputed that White was not an at-will employee because he had an employment contract.[1] Because White was protected by an employment contract, the tort of retaliatory discharge is inapplicable to this case. *Silva*, 106 N.M. at 21, 738 P.2d at 515. White failed to respond to S.E. Acquisition's motion for summary judgment with respect to this issue. Thus, he has failed to demonstrate how retaliatory discharge would apply to his case. S.E. Acquisition is entitled to summary judgment on his retaliatory discharge claim.

In order to resist the motion for summary judgment, White was required to set forth specific facts showing a genuine issue for trial as to a dispositive matter. *See Koch,* ____ F.3d at ____, 2000 WL 155459 at *4. White failed to do this. The Court has examined the record and resolved all reasonable inferences in the light most favorable to Plaintiff. White has failed to demonstrate a genuine issue for trial as to his claim for retaliatory discharge. In addition, under D.N.M.LR-Civ.7.3(b)(4), failure to serve a response in opposition to any motion constitutes consent to grant the motion. Because White failed to respond to the Motion with respect to this issue, I find that White has consented to the grant of summary judgment on this issue.

---

[1] In an unpublished opinion, this District has declined to extend the application of retaliatory discharge where the plaintiff was protected by a collective bargaining agreement. *See Vasquez v. Mason & Hanger-Silas Mason Co.*, No. CIV 85-0150 HB, 1985 WL 5964 (D. N.M. 1985) (Bratton, J.)

**Conclusion**

Upon review of the evidence presented on this motion for summary judgment, the Court finds that genuine issues of material fact remain as to White's hostile work environment and retaliation claims arising under Title VII. S.E. Acquisition's Motion for Partial Summary Judgment should be denied with respect to these claims. However, S.E. Acquisition is entitled to judgment as a matter on law with respect to White's claims of prima facie tort, intentional infliction of emotional distress, and retaliatory discharge. Therefore, S.E. Acquisition's Motion for Partial Summary Judgment should be granted with respect to these claims.

**AN ORDER CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**